UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

866 EAST 164TH STREET, LLC,

                           Plaintiff,

               -against-

UNION MUTUAL FIRE INSURANCE COMPANY,

                           Defendant.

-----------------------------------------------------------------X

16-CV-03678 (SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff moves to compel the disclosure of documents designated as privileged by the defendant Union Mutual Fire Insurance Company. See ECF Nos. 32, 33, 35, 36. This case involves the first party insurance denial of an insurance claim filed by the plaintiff. At issue are the documents that involve the work of Jeffrey Gold, an attorney with the firm Gold Benes LLP, who was retained by the defendant to investigate the loss and advise the defendant regarding whether to pay or reject the claim.

"[D]ocuments prepared in the ordinary course of an insurer's business (which by its nature, involves claim investigation and analysis) are not protected from discovery," even when they are provided to or prepared by counsel. OneBeacon Ins. Co. v. Forman Int'l, Ltd., No. 04 Civ. 2271 (RWS), 2006 WL 3771010, at *5 (S.D.N.Y. Dec. 15, 2006) (internal quotation marks and brackets omitted) (citing cases). Thus, as a general rule, an insurance company's investigation "undertaken to determine whether there is coverage, whether the claim should be paid, and whether a subrogation claim could be pursued, is not undertaken in anticipation of litigation." Selective Ins. Co. of Am. v. Swarey, No. 07 Civ. 6324 (JWF), 2011 WL 240750, at

*1 (W.D.N.Y. Jan. 24, 2011) (citation and internal quotation marks omitted). See also Weber v. Paduano, No. 02 Civ. 3392 (GEL), 2003 WL 161340, at *3-4 (S.D.N.Y. Jan. 22, 2003) (Lynch, J.).

Each party selected documents from the defendant's privilege log for the Court's *in camera* review. Upon review of the parties' letters, the exemplars, and case law concerning attorney-client privilege and work product privilege, the Court holds that: (1) any legal invoices reflecting claims-handling activities performed by Mr. Gold or another attorney, as illustrated by the five representative documents submitted by the defendant, are not privileged; (2) communications reflecting only the individual reserve figures and not any underlying methodology or analysis, as illustrated in UNION0011, are not privileged or otherwise protected; (3) communications demonstrating Mr. Gold's involvement in routine insurance business activity surrounding the defendant's decision to pay or deny the claim at issue are to be produced in their entirety; and (4) communications containing a naked question of law directed to Mr. Gold and his corresponding advice may be redacted with the remaining document produced.

First, the five legal invoices submitted by the Gold Benes LLP are not privileged. These invoices demonstrate that Mr. Gold and another individual identified only as "RJS" conducted routine claims-handling business activities related to the investigation of the claim. Nowhere in these billing entries are Mr. Gold's "legal research, analysis, conclusions, theories, and strategy" disclosed. ECF No. 32 at 2. Indeed, the defendant admits that correspondence between Mr. Gold and Union representatives "reflecting routine claim investigation information, including scheduling of an examination under oath, sending documents to the insured, and issuing a denial letter" have not been redacted. Id. The Court does not understand why, given that the documents reflecting routine claim investigation information are themselves not redacted, the *billing*

*invoices* showing such routine claim investigation activities have not been fully produced as well. Accordingly, the Court finds that the invoices were generated as part of the regular course of the defendant's insurance claims investigation business, and ORDERS that UNION0432, UNION0433, UNION0508, UNION0526 and UNION0554 be produced immediately without redaction, as well as any other such invoices in the defendant's production.

Second, the May 4, 2015 email reflecting the loss reserve and the loss adjustment expense ("LAE") amounts, Bates stamped UNION0011, should be disclosed. The cases cited by the defendant in support of withholding this email and other such documents are inapplicable. The email does not reference Mr. Gold's name or any analysis conducted by or attributable to Mr. Gold, unlike the documents regarding reserves in Sundance Cruises Corp. v. Am. Bureau of Shipping, which contained "counsel's recommendation as to the reserve that should be established and as to whether a reserve should be established at all." No. 87 Civ. 00819 (WK), 1992 WL 75097, at *1 (S.D.N.Y. Mar. 31, 1992). The defendant's reliance on In re Pfizer Inc. Secs. Litig. is similarly misplaced. In re Pfizer addressed whether a *defendant's* reserve decisions related to mass tort litigation are privileged. It did not address whether an *insurance carrier's* reserve decisions made in the ordinary course of its work should be protected. In that case, the district court concluded that Pfizer's decision to reserve funds for individual cases and the methodology used to reserve such funds "could reveal certain key elements of litigation strategy." No. 90 Civ. 01260 (NRB)(SS), 1994 WL 263610, at *1 (S.D.N.Y. June 6, 1994). By contrast, the reserve information at issue here was conveyed fewer than 30 days from the date of the loss; no evidence has been presented that this decision was part of a litigation strategy. Rather, the timing and context of the document make plain that it was made as part of the process of adjusting an insurance claim, which is very different than a defendant setting aside

funds for future litigation exposure. Moreover, the document does not contain any methodology, let alone one that can be attributed to Mr. Gold or another attorney, regarding how the loss reserve and the LAE amounts were calculated. Instead, the email simply states the figures without any analysis or opinion.

Defendant's privilege log suggests that this document should not be produced because it contains "Confidential Proprietary Business Information" and because it is "Material Created in Anticipation of Litigation." The Court rejects these grounds. Reserves are an opinion on damages. There is nothing proprietary about such opinions. And, as discussed, this document was created less than a month from the date of the loss. The defendant—who bears the burden—has not established that it was already anticipating litigation at this early stage of the claims process. Finally, defendant's letter suggests that it should not be required to produce the reserve information because it is not relevant. But documents showing the reserves figures and the changes in such figures throughout the investigation of an insurance claim may be relevant to the issues in this case, namely, whether the defendant improperly denied plaintiff's claim and voided the insurance policy. Given the low bar for relevancy in federal court, this information should be produced. Accordingly, the Court ORDERS that UNION0011 should be produced without redaction, as well as any other such documents showing reserves figures in the defendant's production.

Third, documents bearing the Bates stamp of UNION0483, UNION0485, and UNION0592 should be produced without any redaction. The defendant maintains that the documents contain Mr. Gold's legal reasoning, analysis, theories, or conclusions, or were otherwise "made for the purpose of obtaining legal advice." ECF No. 32 at 2. The Court, however, finds the redacted language in each exemplar to constitute ordinary facts, relayed by

Mr. Gold, that naturally accumulate during the course of an insurance company's decision to pay or deny a claim, such as the testimony of the building owner's son-in-law regarding occupancy and the delay in receiving requested documentation from the insured. See Spectrum Sys. Internat'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 377 (1991) (holding that underlying facts are not protected by the attorney-client privilege); see also Standard Chartered Bank PLC v. Ayala Internat'l Holdings (U.S.) Inc., 111 F.R.D. 76, 80 (S.D.N.Y. 1986) (explaining that the attorney-client privilege does not extend to facts that an attorney obtains from independent sources and then conveys to the client). Moreover, the redacted language in these three exemplars do not appear to have been used as a foundation for legal advice provided by Mr. Gold. Compare Spectrum, 78 N.Y.2d at 380 (holding that the document at issue was exempt from discovery where "the narration relate[d] and integrate[d] the facts with the law firm's assessment of the client's legal position"). Accordingly, with the above in mind, the defendant is directed to produce in unredacted form UNION0483, UNION0485, and UNION0592, as well as any such emails or documents containing only facts regarding the underlying investigation of the claim.

Finally, the Court permits limited redaction for the documents bearing the Bates stamps of UNION0279 and UNION0286. Where an attorney acts as an attorney and provides legal advice and recommendations, even if such advice may ultimately assist the insurer in deciding whether to pay or deny a claim, such communications are protected by the attorney-client privilege. See 105 St. Assoc., LLC v. Greenwich Ins. Co., No. 05 Civ. 09938 (VM)(DF), 2006 WL 3230292, at *1, 3 (S.D.N.Y. Nov. 7, 2006) (holding that when attorney-client communications relate to legal advice, "they do not lose the protection of the attorney-client privilege simply because they involve an insurance claim"); Reliance Ins. Co. v. Am. Lintex Corp., No. 00 Civ. 5568 (WHP)(KNF), 2001 WL 604080, at *1-2 (S.D.N.Y. June 1, 2001).

Assuming that the individuals with Roundhill Express email addresses on UNION0279 and UNION0286 are in fact Union Mutual Insurance Company representatives, UNION0279 contains a naked question of law clearly posed to elicit legal advice, and UNION0286 contains both the same question and a one-sentence response from Mr. Gold in his capacity as attorney, not as a claims investigator. In these two exemplars, *only* the question and the response should be redacted, and the documents should otherwise be produced.[1]

    The Court requests the Clerk of Court to close docket entry number 35.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    New York, New York
              November 23, 2016

---

[1] In UNION0286, the first sentence in the July 24, 2015 email at the top of the document can remain redacted. In UNION0279, the sentence beginning with, "Also . . . ." can remain redacted. All other redactions on that document should be lifted.