USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/3/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

866 EAST 164TH STREET, LLC,

                              Plaintiff,

          -against-

UNION MUTUAL FIRE INSURANCE COMPANY,

                              Defendant.

-----------------------------------------------------------------X

16-CV-03678 (SN)

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

      This dispute involves a first party insurance claim for vandalism casualty loss and loss of rental income at the property located at 866 East 156th Street, Bronx, New York, 10455 (the "Property") and owned by 866 East 164th Street, LLC (the "Plaintiff"). Plaintiff alleges that, by denying its claim for coverage and declaring the insurance policy void *ab initio*, Union Mutual Fire Insurance Company ("Union Mutual") breached the insurance policy as a matter of law.

      The parties cross-move for summary judgment. Union Mutual asserts that the policy was properly voided based on material misrepresentations in plaintiff's application for insurance coverage regarding whether the property was vacant and undergoing major renovations. Union Mutual also raises the affirmative defense of accord and satisfaction; specifically, that Union Mutual issued a policy premium refund check and that, by depositing the check, plaintiff acknowledged that the policy was void *ab initio*. In its cross-motion, plaintiff claims that Union Mutual breached its contract by voiding the policy and that Union Mutual's alleged misconduct violates N.Y. General Business Law § 349. Plaintiff also seeks consequential damages for Union Mutual's breach of its implied duty of good faith and fair dealing.

1

For the reasons stated below, Union Mutual's motion for summary judgment is GRANTED, and plaintiff's cross-motion is DENIED.

**BACKGROUND**

Unless otherwise indicated, the following facts are not disputed. The Property is a multi-level residential building consisting of three residential apartments and a basement. The Property Manager at the time of the insurance policy application was Salomon Aiach.

On February 11, 2015, the property was undergoing renovations and none of its units was occupied. Def.'s Rule 56.1 St. ¶¶ 9–12 (ECF No. 78) ("Def.'s St.").[1] On that date, plaintiff applied for an insurance policy with Union Mutual for the Property through an insurance broker, Fabricant & Fabricant, Inc. ("Fabricant"). Plaintiff claims that Fabricant, not Plaintiff, completed and submitted the insurance application. Pl.'s Rule 56.1 Resp. ¶¶ 1–4 (ECF No. 84) ("Pl.'s Resp."). In response to the questions in the policy application, "Is the property vacant?" and "Is the property undergoing any major renovations?" the application stated, "No." Def.'s St. ¶¶ 2–3. The application was electronically signed with the last four digits of plaintiff's tax identification number. Id. ¶ 4. In addition, the application contained a disclaimer that it was "part of any policy issued whether attached or not" and was understood to constitute a part of the insurance policy.

Union Mutual, through Roundhill Express, LLC (the third-party claims administrator and policy underwriter for Union Mutual), issued an insurance policy (the "Policy") for the Property on February 15, 2015, effective from February 11, 2015, to February 11, 2016. Id. ¶ 6. The Policy provided coverage for "direct physical loss of or damage to the Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss"

---

[1] One lease had been executed for a residential unit before February 11, 2015, but the tenant was not residing on the premises at the time because renovations had not yet completed. Id. ¶¶ 13–14.

but excluded theft from "Covered Cause[s] of Loss." Policy at 4, 18, attached as Ex. A to Compl. (ECF No. 4-1).

After issuing a Policy to an insured, Union Mutual had the discretion to reject claims for coverage for particular causes of loss pursuant to the following definition of "vacancy":

6. Vacancy
   a. Description Of Terms

      (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:
      . . .

      (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
      (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
      (ii) Used by the building owner to conduct customary operations.

      (2) Buildings under construction or renovation are not considered vacant.

   b. Vacancy Provisions

   If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
      (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
      (a) Vandalism
      [ . . . ]

Policy at 34, attached as Ex. C to Lambert Aff. (ECF No. 76-3) (emphasis added). The Policy did not define "renovation," as used in the policy, or "major renovation," as used in the application.

On April 6, 2015, the Property was vandalized and plaintiff submitted a claim to Union Mutual for coverage shortly thereafter. Def.'s St. ¶ 21 (ECF No. 78). Upon investigating the claim, Union Mutual determined that (1) the Property was vacant and undergoing major renovations at the time plaintiff submitted its application for insurance, and (2) the Property was vacant at the time of the loss. Id. ¶¶ 22–23. Specifically, the investigation revealed that the

Property was "completely vacant" when the Policy was applied for, and that while a prospective tenant had signed a lease, the building did not yet have the necessary certificates of occupancy, the utilities were not operational, and no tenants were residing in the property.[2]

Accordingly, Union Mutual denied plaintiff's claim for coverage by letter dated January 25, 2016, stating: "Had the insured accurately reported that the building was vacant and was undergoing renovations, Union Mutual's underwriting guidelines would have required the Company not to issue the Policy." Jan. 25, 2016 Letter at 2, attached as Ex. D to Lambert Aff. (ECF No. 76-4). Because of this purported material misrepresentation, Union Mutual declared the policy to be void *ab initio* and returned the policy premium under separate cover. The refund check was issued in the amount of $2,544 and was accompanied by an explanation from Roundhill that "[t]his policy has been voided ab initio and your premium is being returned to you by this check." Check with Statement at 2, attached as Ex. E to Lambert Aff. (ECF No. 76-5). Plaintiff subsequently deposited the premium check. See Negotiated Check, attached as Ex. F to Lambert Aff. (ECF No. 76-6).

Plaintiff commenced this action on May 19, 2016, alleging breach of contract, bad faith, and violation of N.Y. General Business Law § 349. The parties have cross-moved for summary judgment.

### DISCUSSION

**I.  Standard of Review**

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he trial court's task at the

---

[2] Plaintiff contends that the utilities were operational; just that they were turned off. This dispute is immaterial to the Court's determination.

summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., LP, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Specifically, this means that the moving party bears the initial burden of establishing that there are no material facts in dispute and must provide "affirmative evidence" from which a reasonable fact-finder could return a verdict in its favor. Id. at 257. Then "the burden shifts to the non-movant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). A party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation and quotation marks omitted). Instead, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (internal citation and quotation marks omitted).

## II.     Plaintiff's Breach of Contract Claim

Plaintiff claims that Union Mutual breached its contract by voiding the policy *ab initio* and denying plaintiff's claim for coverage. Plaintiff argues that Property was not vacant based on the Policy's language that a building undergoing renovations is not considered vacant. Plaintiff

5

further argues that the term "major renovations" in the application is ambiguous and should be interpreted in favor of the insured. Union Mutual, in turn, asserts that it was entitled to void the policy because there is no dispute that the building was vacant—that is, no one occupied the building—and that the Policy's definition that a building is not vacant when it is "under construction or renovation" does not save plaintiff from its misrepresentation in the application.

### A.  Relevant Law

#### 1.  Insurance Contract Interpretation

Under New York law, "the initial interpretation of a contract is a matter of law for the court to decide." K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998).

"[A]n insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (internal citation and quotation marks omitted). A contract is unambiguous if it "has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Plan, 7 F.3d 1091, 1095 (2d Cir. 1993). If the terms are unambiguous, courts should enforce the contract as written and must "not consider extrinsic evidence to alter or interpret its meaning." Consarc Corp. v. Marine Midland Bank, N.A., 966 F.2d 568, 573 (2d Cir. 1993); see also Goldberger v. Paul Revere Life Ins. Co., 165 F.3d 180, 182 (2d Cir. 1999) (internal citation and quotation marks omitted). Contractual language whose meaning is otherwise plain is not

ambiguous simply because the parties urge different interpretations in the litigation. See Universal Am. Corp. v. Nat'l Union Mutual Fire Ins. Co. of Pittsburg, Pa., 25 N.Y.3d 675, 680 (2015) ("parties cannot create ambiguity from whole cloth where none exists").

To determine whether the policy language is ambiguous, "courts are guided by the reasonable expectations of the average insured upon reading the policy." Broome Cnty. v. Travelers Indem. Co., 125 A.D.3d 1241, 1242 (3d Dep't 2015); see also Cragg v. Allstate Indem. Corp., 17 N.Y.3d 118, 122 (2011) (insurance contracts are interpreted in accordance with common speech). If the contract is ambiguous, "particularly the language of an exclusion provision," the ambiguity is interpreted in favor of the insured. See Goldberger, 165 F.3d at 182; see also PepsiCo, Inc. v. Winterthur Internat'l Am. Ins. Co., 13 A.D.3d 599, 600 (3d Dep't 2004) ("if the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer" (internal citation and quotation marks omitted)). "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Morgan Stanley Grp. Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (internal citation and quotation marks omitted).

### 2. Material Misrepresentations

In New York, an insurer may rescind an insurance policy if it was issued in reliance on material misrepresentations. See Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan, 77 F.3d 48, 52 (2d Cir. 1996); Process Plants Corp. v. Beneficial Nat'l Life Ins. Co., 53 A.D.2d 214, 216 (1st Dep't 1976); see also N.Y. Ins. Law § 3105. A misrepresentation in an insurance

application is a false "statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. Law § 3105(a). A policy may also be rescinded by the insurer "if the insured fraudulently concealed from or misrepresented a material fact to the insurer at the time the policy was issued." City of Johnstown v. Bankers Standard Ins. Co., 877 F.2d 1146, 1153 (2d Cir. 1989).

A misrepresentation is "material" if the insurer would not have issued the policy had it known of the facts concealed or misrepresented. Morales v. Castlepoint Ins. Co., 125 A.D.3d 947, 947–48 (2d Dep't 2015). "Even an innocent misrepresentation, if material, will support rescission." In re WorldCom, Inc. Sec. Litig., 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005).

Plaintiff's breach of contract claim centers on Union Mutual's January 25, 2016 rescission of the Policy. Union Mutual responds that it was entitled under N.Y. Insurance Law § 3105 to void the Policy because plaintiff made material misrepresentations when applying. The alleged misrepresentations implicate the appropriate interpretation of the terms "vacancy" and "major renovation" in the insurance application.

### B. Plaintiff's Representations on the Application

#### 1. The Building was Vacant

Plaintiff neither disputes Union Mutual's plain and ordinary meaning of "vacancy" nor argues that the Property was not vacant as of the date of the insurance application. See Pl.'s Reply Mem. of Law at 3 (ECF No. 88). To the contrary, plaintiff concedes that the building was vacant: "as of the date of the insurance application, the Property was vacant and Fabricant had actual knowledge of same." Kotchek Aff. in Support of Pl.'s Motion to Amend ¶¶ 10–11 (ECF No. 59) (emphasis added); see also Pl.'s Resp. ¶ 12 (ECF No. 84) (admitting that property was

8

vacant, though under renovation).³ There is, therefore, no genuine dispute of material fact that the response "No" to the vacancy question constituted a false statement and no dispute that the Property was actually vacant within the meaning of Section 6(a)(1)(b).

Plaintiff instead argues that "No" was a proper answer to the vacancy question because Section 6(a)(2) of the Policy states that "[b]uildings under construction or renovation are not considered vacant." There are at least two reasons why this provision does not save plaintiff. First, although the application provides that it "shall constitute part of any policy issued whether attached or not," there is no record evidence that the applicant had access to the underlying policy terms or relied upon them when answering the application questions. Second, the Policy is clear that the vacancy definition applies only "As used in this Vacancy Condition," that is, paragraph 6 of the Policy titled "Vacancy." Thus, there is no basis to apply this vacancy definition beyond that paragraph and to the application questionnaire.

Accordingly, plaintiff has failed to raise a genuine dispute of material fact as to the definition of "vacancy," whether the Property was vacant on the date of the application, and whether Fabricant's answer to the vacancy question was a misrepresentation within the meaning of N.Y. Ins. Law § 3105(a).

---

³ The Court also rejects plaintiff's alternate argument that the misrepresentation should be wholly attributed to its insurance broker Fabricant. There is no evidence that Fabricant was a rogue agent or acted beyond the scope of its authority in completing and submitting the insurance application. Indeed, the application bears the stamp of plaintiff's authorization in the form of the last four digits of plaintiff's tax identification number, which constitutes an electronic signature and acknowledgment. See Binder Package Electronic Signature Page, Insurance Application at 3 (ECF No. 76-2); Lambert Aff. ¶¶ 39–42.

Given that plaintiff retained the insurance broker to fill out the application for coverage, the onus for any mistakes or omissions committed by the broker should fall on the shoulders of the principal, not the agent. See Bohlinger v. Zanger, 306 N.Y. 228, 231 (1954) ("[A]n insurance broker, when acting for an insured, is deemed the agent of the insured . . ."). Moreover, plaintiff's disavowal of responsibility for the application is doubly unavailing when it is suing to enforce the very insurance contract that the application generated.

### 2. This Misrepresentation was Material

Union Mutual asserts that the vacancy misrepresentation was material to its decision to issue the Policy: if it had known that the Property was vacant, it would not have issued the Policy based on the set of unacceptable risks articulated in its Underwriting Guidelines. See Union Mutual Underwriting Guidelines at 43, attached as Ex. A to Lambert Aff. (ECF No. 76-1) (listing "Vacant buildings" as an "Unacceptable Risk[]"); see also Lambert Aff. ¶¶ 27–31 (ECF No. 76) ("If the applicant for insurance selects that the property to be insured has any of the risks deemed unacceptable pursuant to the Underwriting Guidelines [such as vacancy], the website software blocks the application from the quote stage, and Roundhill will not quote or bind coverage. The underwriting stops there.").

Plaintiff first argues that the Underwriting Guidelines is hearsay and inadmissible on the ground that it is a Roundhill, not Union Mutual, document and has not been "properly authenticated" by Union Mutual. See Pl.'s Mem. of Law at 21 (ECF No. 81). The Court can quickly dispense with this objection.

James Lambert, the President and chief underwriter of Roundhill Express, affirmed that he is "fully familiar with Roundhill's Underwriting Guidelines, including the Underwriting Guidelines for Union Mutual's New York Landlord/Tenant Property and General Liability Package Program." Lambert Aff. ¶ 7 (ECF No. 76). He states that he "reviewed the underwriting file with respect to the policy of insurance issued by Roundhill on behalf of Union Mutual to Plaintiff," and attached to his affidavit a "copy of the Underwriting Guidelines in effect at the time an insurance policy was issued to Plaintiff." Id. at ¶¶ 10, 22, Ex. A. Plaintiff offers no legitimate argument that Lambert is not a "qualified witness" or that the Underwriting Guidelines is not a "business record" as required under Federal Rule of Evidence 803(6).

Plaintiff's objection that a non-party authenticated a business record on which a party relies is overruled as irrelevant. The Underwriting Guidelines is admissible and considered by the Court in this motion.

Plaintiff's other objections are without merit. Plaintiff complains that the record does not contain a contract between Union Mutual and Roundhill or a sworn statement from Union Mutual that Roundhill is its authorized agent. But James Lambert's affidavit is uncontested, and thus the Court deems the material facts stated in his affidavit to be undisputed. Lambert attests that he is the President of Roundhill, which is Union Mutual's "Third-Party Claims Administrator." Lambert Aff. ¶¶ 2–3 (ECF No. 76). Lambert is "responsible for handling all aspects of claim management for claims made against policies of insurance" underwritten by Roundhill for Union Mutual and is "fully familiar with Roundhill's Underwriting Guidelines," including the guidelines used in plaintiff's claim. Id. ¶¶ 4, 7. Moreover, he states that Roundhill was responsible for underwriting Union Mutual's general liability insurance policies for residential buildings and was authorized to do so only pursuant to the Underwriting Guidelines. Id. ¶¶ 5–6, 20, 24.

Thus, plaintiff has failed to raise a genuine dispute that Roundhill was authorized to act as Union Mutual's Claims Administrator, that the Underwriting Guidelines attached as Exhibit A was in effect at the time an insurance policy was issued to plaintiff, and that Roundhill was authorized to write and issue policies on behalf of Union Mutual only pursuant to those Underwriting Guidelines.

Lambert's affidavit further explains the process by which an applicant enters information onto a web-based platform to apply for insurance. Id. ¶¶ 23-31. His unchallenged explanation is that where "the applicant for insurance selects that the property to be insured has any of the risks

11

deemed unacceptable pursuant to the Underwriting Guidelines, the website software blocks the application from the quote stage, and Roundhill will not quote or bind coverage. The underwriting stops there. There are no exceptions to this computerized process." Id. ¶¶ 29-31. The Underwriting Guidelines, in turn, provide that unacceptable risks include "vacant buildings." Id., Ex. A, pp. 43 of 66. Thus, plaintiff has failed to raise a material dispute that had Fabricant had truthfully answered "Yes" to the question "Is the property vacant?" the policy would have still issued.

Accordingly, on this undisputed record, no reasonable jury could find that plaintiff's false statement that the building was not vacant was a not a material misrepresentation. Union Mutual was justified as a matter of law in voiding *ab initio* and rescinding the Policy due to plaintiff's material misrepresentation. Union Mutual's motion for summary judgment with respect to plaintiff's breach of contract claim is therefore GRANTED and plaintiff's cross-motion is DENIED.[4]

### III. Plaintiff's Breach of the Duty of Good Faith and Fair Dealing

Plaintiff seeks consequential damages for breach of the duty of good faith and fair dealing implicit in all contracts. Under New York law, there is an implied duty of good faith and fair dealing in all contracts. See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc., 769 F.3d 807, 817 (2d Cir. 2014); Kings Infiniti Inc. v. Zurich Am. Ins. Co., 990 N.Y.S.2d 437, at *7 (N.Y. Sup. Ct. Apr. 3, 2014). This duty "is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." PCVST Mezzco 4, LLC v. Wachovia Bank

---

[4] In light of this determination, the Court need not reach Union Mutual's alternate arguments that plaintiff also made a material misrepresentation by answering "no" to the question "Is the property undergoing any major renovations?" and that plaintiff's depositing of a policy premium refund check constituted an acknowledgment that the policy was void *ab initio* and a valid accord and satisfaction.

Comm. Mortg. Trust 2007–C30, 2015 WL 153048, at *5 (S.D.N.Y. Jan. 12, 2015) (citing Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce, 265 A.D.2d 513, 697 N.Y.S.2d 128, 130 (N.Y. App. Div. 2d Dep't 1999)). Breach of the duty of good faith and fair dealing "is merely a breach of the underlying contract, and a claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC, 861 F. Supp. 2d 344, 365 (S.D.N.Y. 2012) (internal citations omitted).

Union Mutual's denial of the claim is the factual predicate for plaintiff's breach of contract claim and breach of the implied duty of good faith and fair dealing. There is no separate or independent basis for concluding that Union Mutual acted in a manner that injured plaintiff's rights under the insurance contract. Thus, any claim for a breach of the implied duty of good faith and fair dealing is duplicative of plaintiff's contract claim and must be dismissed.

Plaintiff is further not entitled to consequential damages. Plaintiff has not established as a matter of law that Union Mutual breached the contract (or any implied duty). Nor has it established that the parties reasonably contemplated any damages beyond the value of the claim.

## IV. Plaintiff's General Business Law § 349(a) Claim

Plaintiff asserts that Union Mutual violated New York General Business Law § 349(a) because its actions were "part of a pattern and practice to sell insurance policies to businesses utilizing an insurance application containing undefined, vague, and ambiguous words and terms," thereby "effectively denying or hindering the processing of legitimate claims." Am. Compl. ¶¶ 33, 37 (ECF No. 7).

General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law 349(a). To establish a prima facie violation, a plaintiff must prove "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman et al. v. Chem. Bank, 95 N.Y.2d 24, 29 (2000). Whether conduct is "consumer-oriented" turns on several factors: the amounts at stake, the nature of the contracts at issue, and the sophistication of the parties. See Interested Underwriters at Lloyd's of London Subscribing to Policy # 991361018 v. Church Loans & Invs. Trust, 432 F. Supp. 2d 330, 332 (S.D.N.Y. 2006) (internal citation omitted). These considerations are used to ascertain whether the disputed acts or practices have a "broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995); see also Wilner v. Allstate Ins. Co., 893 N.Y.S.2d 208, 215–16 (2d Dep't 2010) (plaintiff must show "an extensive marketing scheme that has a broader impact on consumers at large"). Disputes involving private contracts or single-shot transactions, however, are outside the ambit of General Business Law § 349. See also Oswego, 85 N.Y.2d at 20; Zawahir v. Berkshire Life Ins. Co., 804 N.Y.S.2d 405, 407 (N.Y. App. Div. 2d Dep't 2005); Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch, 593 F. Supp. 743, 752 (S.D.N.Y. 1984).

Plaintiff has set forth no concrete evidence that Union Mutual's conduct was "consumer-oriented." Its allegations regarding a larger effect on consumers are conclusory and speculative at best. The present action is "about a decision as to coverage, made on the basis of facts concerning this particular insured." Sec. Mut. Life Ins. Co. of N.Y. v. DiPasquale, 283 A.D.2d 182, 182 (N.Y. App. Div. 1st Dep't 2001). Plaintiff has failed to demonstrate that there exists a broader impact of the alleged misconduct, i.e., that there exist other commercial property-owners

who answered the application in the same way and whose policies were subsequently voided based on Union Mutual's investigative findings. Indeed, plaintiff's citations in its claims of consumer-oriented conduct are all with regards to Union Mutual's conduct in *this action against plaintiff itself*. No evidence has been introduced to suggest that Union Mutual purposefully engineered a large-scale program of defrauding a broad population of insured parties.

Plaintiff's allegation of Union Mutual's violation of N.Y. Insurance Law § 2601 also fails. N.Y. Insurance Law § 2601 does not give rise to a private cause of action for unfair business practices. See N.Y. Univ. v Continental Ins., 87 N.Y.2d 308, 317 (1995) ("The provisions of the Insurance Law . . . are properly viewed as measures regulating the insurer's performance of its contractual obligations,. . . not as a legislative imposition of a separate duty of reasonable care."). Claims under a consumer protection statute for which there is no private cause of action cannot be bootstrapped onto claims under General Business Law § 349, which does create a private right of action. See Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (rejecting plaintiffs' argument that defendant committed a "deceptive act" within the meaning of General Business Law § 349 by violating General Business Law § 601 because § 601 "does not supply a private cause of action" and the New York Legislature did not authorize "private enforcement of Section 601" by "creating a private right of action to enforce Section 349").

Accordingly, Union Mutual's motion for summary judgment with respect to plaintiff's General Business Law § 349 claim is GRANTED and plaintiff's cross-motion is DENIED.

## CONCLUSION

For these reasons, Union Mutual's motion for summary judgment is GRANTED and plaintiff's cross-motion is DENIED. The Clerk of Court is respectfully directed to terminate the pending motions at ECF Nos. 74 and 80 and close this case.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    October 3, 2017
                New York, New York